

FILED

MAY 1 5 2008

May 15 2008

Judge Samuel Der-Yeghiayan
U.S. District Court

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 108-2 |
| vs. | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| SHAUN CHANEY | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant SHAUN CHANEY, and his attorney, DANIEL WOLFF, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C), Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1, 4, and 6).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Four of the indictment.  Count Four charges defendant with devising, attempting to devise, and participating in a scheme to use a wire in interstate commerce to obtain money and property owned by and under the custody of banks and lenders, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1343.  In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count Four of the indictment.  In pleading guilty, defendant admits the following facts and that those facts: establish his guilt beyond a reasonable doubt, constitute Relevant Conduct within the meaning of Guideline § 1B1.3(a)(2), and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

Defendant Shaun Chaney admits that beginning in or about 2003 and continuing through in or about 2005, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, he, together with co-defendants Larry Melvin, Maria Vega and Mary Dochee, and others, devised, attempted to devise, and participated in a scheme to defraud and to obtain money and property owned by and under the custody and control of BNC Mortgage and other banks and lenders, by means of materially false and fraudulent pretenses,

2

representations, and promises. Defendant further admits that in furtherance of the scheme, on or about November 4, 2004, at Frankfurt, in the Northern District of Illinois, Eastern Division, and elsewhere, he and co-defendants Larry Melvin and Mary Dochee, for the purpose of executing the scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce, certain wirings, signs, and signals, namely, a funds transfer in the amount of approximately $201,839 from Deutsche Bank, in New York, New York, to Fifth Third Bank in Cincinnati, Ohio, for credit to the account of City Suburban Title, which funds represented the proceeds of a mortgage loan issued to Buyer C for the purchase of a residence located at 4101 W. 187th Place, Country Club Hills, Illinois, in violation of Title 18, United States Code, Sections 1343 and 2.

More specifically, defendant admits that he recruited dozens of individuals to buy properties through Equity Express. Defendant also admits that while he never worked directly for Equity Express, he frequently acted as a middle man, getting paid to match property buyers and sellers. The buyers would then work with an Equity Express loan officer. For that service, he typically received a referral fee from Equity Express of between $5,000 to $20,000 for each referral he made to Equity Express. Defendant, in turn, paid the buyers between $5,000 and $10,000, which amounts came out of his referral fee.

Defendant admits he, co-defendants Larry Melvin and Mary Dochee, and others, recruited individuals to buy properties through Equity Express by promising potential buyers they would not have to use any of their own money for down payments or earnest money

deposits, that the properties were ready for occupancy, and that they would be paid money to act as buyers and attend the closings.

Defendant admits he, co-defendants Larry Melvin and Mary Dochee, and others, referred the buyers to co-defendant Maria Vega and other loan officers and loan processors at Equity Express so that fraudulent mortgage loan applications could be prepared on behalf of the buyers.

Defendant admits he and co-defendants Larry Melvin and Maria Vega prepared, and caused others to prepare, mortgage loan application packages that were fraudulent, in that they contained a variety of false statements regarding the buyers' employment, income, assets, and liabilities, and were designed to induce lenders to issue mortgage loans to buyers who would not otherwise have qualified for such loans.

Defendant and co-defendants Larry Melvin, Maria Vega, and Mary Dochee created, and caused others to create, false W-2 Wage and Tax Statements ("W-2s"), false earnings statements, false verifications of employment ("VOEs"), false verifications of rent ("VORs"), false leases, and false tenant ledgers to support the false statements in the loan applications regarding the buyers' employment and income. Defendant also admits creating and causing others to create false verifications of deposit ("VODs") to support the false representations in the loan applications regarding the amounts of money and sources of the deposits in the buyers' bank accounts. Defendant knew co-defendant Mary Dochee gave defendant and others at Equity Express permission to put her name, phone number, and

company on false VORS, which defendant and Equity Express employees then submitted to lenders on behalf of the borrowers.

Defendant admits he witnessed and participated in the creation of false leases stating that a borrower was receiving or was going to receive rental income in instances where a borrower owned or was purchasing a multi-unit building. Defendant also directed Equity Express employees, including co-defendant Maria Vega, to sign the false leases. Defendant also falsely inflated or created rental income on some leases to qualify the borrower for the loan.

Defendant further admits that he and his co-defendants Larry Melvin and Maria Vega caused some fraudulent mortgage loan packages to be submitted to lenders which misrepresented that the buyers had paid rent for properties managed by a property management company called Ezra, Inc. and by Company A when, in fact, neither company managed the properties at issue and the buyers did not rent property through them. Defendant further admits he directly paid to Varena McCloud and Individual B for fake VORs. Defendant admits the false nature of the VORs was not disclosed to the lenders who approved the borrowers' loans.

Defendant admits he and his co-defendants Larry Melvin, Maria Vega, and Mary Dochee submitted, and caused others to submit, loan application packages to lenders containing, among other things, the false documents referred to above, namely, the false loan applications, W-2s, earnings statements, VOEs, VODs, VORs, and leases, well knowing that

5

the false statements in those documents were material to the lenders' decisions to issue mortgage loans to buyers of the properties and were made for the purpose of inducing the lenders to issue loans to individuals who were otherwise not qualified for the loans.

Defendant admits he and co-defendants Larry Melvin and Mary Dochee received the proceeds of mortgage loans that lenders issued to buyers of the properties on or near the dates of the closings on the property sales, and that they and their co-schemers used those loan proceeds to enrich themselves and to keep the scheme going by using the funds to fraudulently buy and sell more property. Beginning in approximately 2005, lenders stopped allowing investors (*i.e.*, persons who referred borrowers to Equity Express and co-defendants Larry Melvin and Maria Vega, including defendant) to be compensated from proceeds from the sale. Defendant admits that after the prohibition on payments to investors took effect, he and others, including co-defendant Larry Melvin, caused the lenders to continue to disburse money to the investors, including defendant, but did not disclose these payments on the HUD-1 statements.

Defendant admits being involved in the submission of false loan applications and related documents to lenders BNC Mortgage, Accredited Home Lenders, Argent Mortgage Co., LLC, CIT Group, Encore Credit Corp., Fremont Investment & Loan, Long Beach Mortgage, Midwest American Financial Corp., New Century Mortgage, People's Choice Home Loan, Resmae Mortgage, and Option One Mortgage, among others.

6

It was further part of the scheme that defendant concealed, misrepresented, and hid, and caused to be concealed, misrepresented, and hidden, the existence of the scheme and the purposes of the scheme.

Defendant admits that, as a result of his fraudulent acts, various banks and lenders issued mortgage loans to the buyers of approximately 35 properties for an amount totaling approximately $9,159,362, which resulted in losses to the banks and lenders on the mortgage loans because they were not repaid by the borrowers, and because at least some of the properties were abandoned or in poor condition.

7.      The foregoing facts are set forth solely to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

### Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 30 years' imprisonment because the offense affected a financial institution.  Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense.  This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from

7

that offense, whichever is greater.  Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

      b.     Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

      c.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

8

b.    **Offense Level Calculations.**

i.    The base offense level for the charge in  Count One of the indictment is 7, pursuant to Guideline § 2B1.1(a)(1);

ii.    Pursuant to Guideline § 2B1.1(b)(1)(J), the base offense level is increased by eighteen levels because the loss is more than $2,500,000 but less than $7,000,000;

iii.    Defendant acknowledges that the loss amounts and, therefore, the offense level and Guidelines range, may increase as additional losses are realized from the fraudulent transactions in which the defendant participated.

iv.    Pursuant to Guideline § 2B1.1(b)(9)(C), the base offense level is increased by two levels because the offense involved sophisticated means.

v.    Pursuant to Guideline § 3B1.1(c), the base offense level is increased by two levels because defendant was an organizer, leader, manager, or supervisor.

vi.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.  If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

e.    Both parties expressly acknowledge that while none of the Guideline calculations set forth above are binding on the Court or the Probation Office, the parties have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations – specifically, those set forth above in subparagraphs 10(b)(i) and 10(b)(iii-vii) of this paragraph – are binding on the parties, and it shall be a breach of this Plea Agreement for either party to present or advocate a position inconsistent with the agreed calculations set forth in the identified subparagraphs.

f.    Defendant understands that with the exception of the Guideline provisions identified above as binding on the parties, the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to

11

cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

## Agreements Relating to Sentencing

12.    At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1, to depart from the applicable Guideline range and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court.

13.    If the government moves the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 66 percent of the low end of the applicable advisory Guideline range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the

Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1, to depart from the applicable Guideline range, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1.

15.     Regarding restitution, the parties acknowledge that  pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to lenders he defrauded, including BNC Mortgage, Accredited Home Lenders, Argent Mortgage Co., LLC, CIT Group, Encore Credit Corp., Freemont Investment & Loan, Long Beach Mortgage, Midwest American Financial Corp., New Century Mortgage, People's Choice Home Loan, Resmae Mortgage, and Option One Mortgage, among others, or their successors, in an amount to be determined by the Court at

sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

### Forfeiture

18.    The indictment charges that defendant is liable to the United States for approximately $19,200,000, which funds are subject to forfeiture because those funds were involved in the violations alleged in the scheme charged in Count Four. By entry of a guilty plea to Count Four of the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

19.    Defendant agrees to the entry of a forfeiture judgment in the amount of $19,200,000, and against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and

further agrees to the seizure of these funds so that these funds may be disposed of according to law.

20.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Presentence Investigation Report/Post-Sentence Supervision

21.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

22.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence

15

for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced.  Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

24.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 108-2.

25.    This Plea Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

16

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

26. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

17

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

18

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to

19

him, and the consequences of his waiver of those rights. Defendant understands that he has the right to have the criminal charges in the indictment brought within five years of the last of the alleged acts constituting the specified violations. By signing this document, defendant knowingly waives any right to have the charges in the indictment brought against him within the period established by the statute of limitations. Defendant also knowingly waives any defense or claim based upon the statute of limitations or upon the timeliness with which the charges in the indictment were brought.

## Other Terms

27.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.     Defendant understands that pursuant to Title 12, United States Code, Section 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

29.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

30.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

21

32.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney.    Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____5/15/08_____

_____
PATRICK J. FITZGERALD
United States Attorney

_____
SHAUN CHANEY
Defendant

_____
LISA M. NOLLER
MEGAN CHURCH
Assistant U.S. Attorneys

_____
DANIEL WOLFF
Attorney for Defendant

22